**Floyd Charles FALLEN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19527.**

United States Court of Appeals
Fifth Circuit.

July 26, 1962.

Rehearing Denied Oct. 11, 1962.

Wm. Glenn Cone, Jacksonville, Fla., for appellant.

Emmett A. Moran, Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before RIVES, JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge.

Floyd Charles Fallen has attempted to appeal from a judgment and sentence which followed a verdict of guilty returned after a trial in the District Court of the Southern District of Florida sitting in Jacksonville. Presiding at the trial and imposing the sentence was Judge Albert L. Reeves, a Senior Judge of another District sitting by designation. The two indictments upon which Fallen was tried and convicted charged a conspiracy, breaking into a post office, and stealing and converting property of the United States. The two cases were consolidated for trial. The verdicts finding Fallen guilty were returned on January 11, 1962. On January 15, 1962, Fallen appeared with his court-appointed counsel for sentencing. Prior to imposing sentence the judge briefly reviewed and recited the testimony showing that Fallen had participated in the post office robbery, received and took away some of the fruits of that theft, and that his car was used to take some of the stolen property to Tennessee and North Carolina. The judge reviewed the criminal record of Fallen and called his attention to his statement while on probation that as long as he was on probation he would behave himself but when probation terminated he would go the limit in violating the law. Sentences aggregating twenty years were imposed. On the following day, January 16, 1962, Fallen was taken by the United States Marshal to the United States Penitentiary at Atlanta, Georgia.

On January 29, 1962, eighteen days after the verdicts of guilty were returned and fourteen days after sentences were imposed, the Clerk of the District Court received through the mails an envelope containing two letters to the court signed by Fallen. The envelope bore a Government frank but was not postmarked with a date or otherwise. Each of the enclosures was dated January 23, 1962. One of these read:

"I would like to appeal the court's decision in my case.

"I would like to get the court record as a pauper."

The other was of this tenor:

"Since I haven't heard from the lawyer I would like for this letter to ask for 'A Motion for a New Trial.'

"The basis for the new trial is that the trial judge erred in his charge to the jury—also the evidence did not warrant conviction on those charges."

When these papers came into the hands of the Clerk of the Court on January 29, 1962, Judge Reeves had left Jacksonville. The matter came to the attention of Chief Judge Bryan Simpson who conferred with Mr. Joel S. Moss, who as court-appointed counsel had represented Fallen at the trial. Mr. Moss, by a letter dated and delivered on January 30, 1962, stated to Judge Simpson that after Fallen was sentenced he and Fallen talked for about an hour and a half and during the conversation Fallen had said that he thought he could raise sufficient funds to pay an attorney to represent him in an appeal, should he decide to take one. His counsel declined and suggested to Fallen that he secure another attorney without delay so as not to forfeit his right to appeal. Fallen stated to his counsel that he would procure another attorney. Mr. Moss concluded his letter with the statement that since the conversation on the day of the sentence he had not represented Fallen.

On February 1, 1962, Judge Simpson entered an order styled "Order with Re-

spect to Notice of Appeal" although in its operation, related primarily to the motion for a new trial. Because of the need for making reference to this order, it is set out in a footnote.[1] The order directed that a copy of the two Fallen let-

.1. "The captioned cases were consolidated for trial and were tried before the Honorable Albert L. Reeves, Senior District Judge, sitting in this District by designation, culminating in verdicts of guilty on Thursday, January 11, 1962. The defendant was represented at said trial by his Court appointed counsel, Joel Moss, Esquire, of the Jacksonville Bar. The defendant, with his counsel, appeared before Judge Reeves on Monday, January 15, 1962, at which time sentence was imposed in each of the two cases. On that date, as demonstrated by Mr. Moss' letter addressed to the undersigned Judge, dated January 30, 1962, (which letter the Clerk of this Court is directed to file, in duplicate, in the captioned cases). By mutual agreement and understanding reached between Mr. Fallen and Mr. Moss, Mr. Moss' representation of the defendant ended. No motion for new trial or other post-trial motion was filed by Mr. Moss between verdict and sentence.

"During the trial and thereafter until sentence Mr. Fallen was confined in the Duval Medical Center, Jacksonville, Florida, under guard, and brought to trial each day under guard. The Federal jail physician and a consulting physician had informed the Court that Mr. Fallen's physical condition would not be endangered by going to trial but that he should remain hospitalized. It was for the purpose of effecting Mr. Fallen's transfer from the hospital and cutting off the expense of armed guards at the hospital room necessarily being borne by the Marshal of this District that Judge Reeves imposed sentence within four (4) days of verdict and on the second Court day after verdict, the intervening days being Friday, January 12 (a Court day), Saturday, January 13, and Sunday, January 14. Because of Mr. Fallen's physical condition and because of the guard expense above referred to, Mr. Fallen was, by the Marshal of this District, transferred on Tuesday, January 16, to the United States Penitentiary, Atlanta, Georgia, and has remained there since.

"Judge Reeves completed his trial duties under his assignment on Friday, January 26, and returned to his home at Dunedin, Florida. Two communications, enclosed in a single envelope, addressed simply to 'United States District Court, Jacksonville, Florida' were received in the Clerk's office on Monday, January 29, 1962, from the defendant Floyd Charles Fallen at the United States Penitentiary. Each is dated February 23, 1962 (eight days after sentence) but the covering envelope, as is usual with letters from prisoners, bears no postmark but simply the rubber stamp legend 'Postage and Fees Paid F.B.P.' The Clerk is directed to duplicate such communications and place a copy of each in each of the captioned files. The first one reads:

" 'Dear Sir:

" 'I would like to appeal the court's decision in my case.

" 'I would like to get the court record as a pauper.

 " 'Respectfully
 " 'Floyd C. Fallen'
The second letter reads:

" 'Dear Sir:

" 'Since I haven't heard from the lawyer I would like for this letter to ask for "A Motion for a New Trial."

" 'The basis of the new trial is that the trial judge erred in his charge to the jury—also the evidence did not warrant conviction on those charges.

 " 'Respectfully,
 " 'Floyd C. Fallen'
"It would appear from Mr. Moss' letter that while appeal was discussed on January 15 with Mr. Fallen, the provisions of Rule 33, F.R.Crim.P. with respect to motion for new trial were not discussed with him. That is to say— that it does not appear that Mr. Fallen was advised that motion for new trial should be made as a basis for Court of Appeals review of the sufficiency of the evidence nor that such motion should be made within five days after verdict or finding of guilty or within such further time as the Court may fix during the five day period.

"Further, it does not appear that Mr. Fallen has been advised of the requirements of Section 1915(a), Title 28, U.S. Code, that affidavit must be made that he is unable to pay costs or give security therefor in order for the Court to authorize his appeal to be taken in forma pauperis.

"It is clear, nevertheless, that twelve days after trial and eight days after sentence, Mr. Fallen desired to enter (a) Motion for New Trial, (b) Notice of Appeal, and (c) to be permitted to appeal in forma pauperis and to receive a copy of the transcript of record.

"It is clear from an examination of Tillman v. United States (5 C.A.1959)

ters, of the letter from Mr. Moss, and of the order, be placed in each of the two cases. Moss was reappointed to represent Fallen in presenting to Judge Reeves the question of whether the motion for a new trial was timely filed and, if so, whether it should be granted. The United States Attorney was directed to place the matter before Judge Reeves for consideration and to give notice. The matter came before Judge Reeves and on February 21, 1962, he entered an order denying the motion for new trial on the merits and expressly declining to rule upon the question as to whether the motion was timely filed. On the same day, February 21, 1962, a notice of appeal was filed by Mr. Moss. An affidavit of Fallen was filed in support of an application to appeal in forma pauperis and an order was entered granting the application. The Government moved to dismiss the

268 F.2d 422, that Mr. Fallen's letters constitute timely notice of appeal and will be so treated at the proper time by the Court of Appeals. Affidavit in forma pauperis can still be prepared and executed by Mr. Fallen so as to permit him to prosecute his appeal in forma pauperis.

"It is not entirely clear, due to the positive five-day limitation contained in Rule 33, F.R.Crim.P. whether or not Mr. Fallen may be considered as having timely moved for a new trial. As to this question, however, he or his counsel is entitled to urge consideration by the trial judge of his letter of January 23, as a Motion for new trial, timely filed, and to secure from the Trial Judge, either consideration of such motion, or, in the alternative, a ruling that it was not timely filed, and hence may not be ruled upon.

"In several of the other cases tried by Judge Reeves during the criminal term just completed, motions for new trials have been filed and will require Judge Reeves' returning to Jacksonville for hearing and decision thereon. The date when this is to be accomplished has not yet been arranged with Judge Reeves but the undersigned Judge expects to complete such arrangements within the near future. It is entirely proper that Judge Reeves consider the questions raised in the paragraph next above at the time of such visit to Jacksonville.

appeal on the ground that there was no timely filing of a notice of appeal. Fallen filed, on March 7, 1962, an affidavit reciting that he did not see Mr. Moss between January 11, 1962, the date of his conviction, and January 15, 1962, the date he was sentenced, that he was, after being sentenced, returned to Duval Medical Center in Jacksonville [2] under guard and without visitors, that he was taken to Atlanta on January 16, 1962, where, due to illness and processing he was "unable to write to the court requesting a new trial until the 23rd day of January, 1962." In order that the expense of the preparation of a record might be avoided in the event the appeal must be dismissed, the cause was specially set on the motion to dismiss, other counsel was appointed to represent Fallen, and the jurisdictional question was argued.

"In consideration of the foregoing it is

"ORDERED:

"1. As indicated above the Clerk of this Court is directed to place copies of Mr. Moss' letter and of the two Fallon letters in each of the two captioned cases.

"2. Joel S. Moss, Esquire, is re-appointed counsel for the defendant Floyd Charles Fallen in each of the two captioned cases for the limited purpose of presenting to Judge Reeves the question of whether his motion for new trial was timely filed and, if so, whether said motion should be granted.

"3. The United States Attorney is directed to place this matter for consideration upon Judge Reeves' calendar and to give appropriate notice to Mr. Moss of the hearing upon said date and at such hour as may be arranged for Judge Reeves to return to Jacksonville to hear other pending matters.

"4. The Clerk of this Court is directed to place duplicate originals of this order in each of the captioned cases.

"DONE AND ORDERED in Chambers at Jacksonville, Florida, this 1st day of February, 1962.

"[Signed] Bryan Simpson
"Chief Judge"

2. Fallen was paralyzed from the waist down and had been kept at the hospital under guard during his trial. See Judge Simpson's order supra Note 1.

 The Rules fix the time within which an appeal can be taken. They provide:

"An appeal by a defendant may be taken within 10 days after entry of the judgment or order appealed from, but if a motion for a new trial or in arrest of judgment has been made within the 10-day period an appeal from a judgment of conviction may be taken within 10 days after entry of the order denying the motion. When a court after trial imposes sentence upon a defendant not represented by counsel, the defendant shall be advised of his right to appeal and if he so requests, the clerk shall prepare and file forthwith a notice of appeal on behalf of the defendant. An appeal by the government when authorized by statute may be taken within 30 days after entry of the judgment or order appealed from." Rule 37(a) (2), Fed. Rules Crim.Proc., 18 U.S.C.A.

The Court may not enlarge the time for taking an appeal, nor for filing a motion for a new trial. Rule 45(b) Fed.Rules Crim.Proc., 18 U.S.C.A. The motion for new trial was not filed, nor does it bear a date until after the expiration of the five-day period prescribed by Rule 33, Fed.Rules Crim.Proc., 18 U.S.C.A. The district court should have determined whether or not it had jurisdiction and if it had none it should have dismissed or denied the motion without undertaking to pass upon the merits. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263. It seems clear that the district court had no jurisdiction to consider the motion since more than twice the permitted time had expired. Miller v. United States, 5th Cir. 1943, 134 F.2d 485; Marion v. United States, 9th Cir. 1949, 171 F.2d 185, cert. den. 337 U.S. 944, 69 S.Ct. 1500, 93 L.Ed. 1747. Since there was an absence of jurisdiction to consider the motion, the filing of it did not toll nor did the purported ruling upon the merits of it extend the time for filing the notice of appeal. United States v. Bertone, 3rd Cir. 1957, 249 F.2d 156; Kirksey v. United States, D.C.Cir.1954, 94 App.D.C. 393, 219 F.2d 499, cert. den. 358 U.S. 848, 79 S.Ct. 74, 3 L.Ed.2d 82. The Bertone case was followed by this Court in Lott v. United States, 5th Cir. 1960, 280 F.2d 24, rev. other grounds, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940. If we have any jurisdiction to consider and decide the appeal it must be because of the notice of appeal dated January 23, 1962, and received by the Clerk on January 29, 1962, and not by reason of the notice of appeal filed February 21, 1962, after the order on the motion for new trial had been entered.

 Although one who has been convicted of a criminal offense has a right to have his conviction reviewed, he must, in order to exercise that right, meet the time requirements of the procedural steps for perfecting his appeal, the first of which is the giving of a timely notice of appeal and without which the Court of Appeals has no jurisdiction. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21; United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed. 2d 259.

It has been urged that the district court was required[3] to advise Fallen of his right to appeal. There is merit in the suggestion if it can be said that the court-appointed counsel, who had stood by Fallen's side and had spoken on his behalf while he was being sentenced, somehow disappeared eo instanti, during the time the sentence was being pronounced so that it could be said that Fallen was not represented by counsel when the court imposed sentence. The record of the judgments and commitments shows that "On this 15th day of January, 1962, came the attorney for the government and the defendant appeared in person and by counsel, Joel Moss, court appointed * * *." Fallen's court-appointed counsel did not think his representation had

---

3. "When a court after trial imposes sentence upon a defendant not represented by counsel, the defendant shall be advised of his right to appeal * * *." Rule 37(a) (2) Fed.Rules Crim.Proc., 18 U.S.C.A.

terminated until the conclusion of the hour and a half conference between attorney and client following the imposition of sentence, as appears from his letter to Judge Simpson. The Supreme Court, discussing this question, has said:

"The salutary purpose of this provision [Rule 37(a) (2)] may, however, not be achieved when the defendant appears at sentencing with counsel. If neither counsel, whether retained or court appointed, nor the district judge imposing sentence, notifies the defendant of the requirement for filing a prompt notice of appeal, the right of appeal may irrevocably be lost." Coppedge v. United States, supra.

There is, we think, no merit in this point. Williams v. United States, D.C.Cir.1951, 88 App.D.C. 212, 188 F.2d 41.

██ ▌ The Rules of Criminal Procedure do not permit, as do the Rules of Civil Procedure,[4] any enlargement of time for taking an appeal because of neglect, excusable or otherwise, or inadvertence. United States v. Robinson, supra; United States v. Isabella, 2nd Cir. 1958, 251 F.2d 223. The jurisdiction of Courts of Appeal is statutory and if the requirements of the statute are not met the jurisdiction is not invoked. The rules are designed to fix a definite, ascertainable point in time when litigation shall be at an end unless an appeal has been taken within the prescribed time. Huff v. United States, 5th Cir. 1951, 192 F.2d 911, cert. den. 342 U.S. 946, 72 S. Ct. 560, 96 L.Ed. 703. See Brant v. United States, 5th Cir. 1954, 210 F.2d 470. Chief Judge Simpson felt that it was clear from an examination of Tillman v. United States, 5th Cir. 1959, 268 F.2d 422, that Fallen's letters constituted timely notice of appeal. In the Tillman case it was held that the timely filing of a petition for leave to appeal in forma pauperis will satisfy the requirement for the timely filing of a notice of appeal. The judgment of conviction in the Tillman case was entered on June 27, 1958,

and the forma pauperis petition was filed the same day. Having held that the petition would be treated as a notice of appeal the ten-day rule was out of the case. The Supreme Court recognized this principle in Coppedge v. United States, supra, where in a footnote it is said:

"Although the timely filing of a notice of appeal is a jurisdictional prerequisite for perfecting an appeal, United States v. Robinson, 361 U.S. 220, [80 S.Ct. 282, 4 L.Ed.2d 259,] a liberal view of papers filed by indigent and incarcerated defendants, as equivalents of notices of appeal, has been used to preserve the jurisdiction of the Courts of Appeals."

Among other cases cited to the above case is Tillman v. United States, supra. The question related to the content of the paper to satisfy the requirement that it be a notice of appeal and was wholly unrelated to the time within which the notice must be filed.

The affidavit of Fallen recites that he was unable to write to the court until January 23, 1962. He does not say that he then attempted to put it in course of mailing nor does he say when he attempted to do so. Although we think it is wholly immaterial, there is nothing before us to indicate that the authorities at the Atlanta Penitentiary departed from the customary routine of promptly dispatching uncensored and unread, prisoners' mail addressed to a court or court official. It may be that the removal of Fallen from Jacksonville, where he was tried, to the Atlanta prison on the day following that on which he was sentenced may, to some extent, have delayed the preparation of his notice of appeal, but it does not appear that this prevented a notice of appeal from being filed within the time permitted by the rule. We do not know that any basis exists for an objection to the removal, without delay, of a convicted prisoner to a place of confinement, or that any enlargement of the

4. Rule 6(b) Fed.Rules Civ.Proc., 28 U.S.C.A.

time for taking an appeal follows from such removal.

■ The last day permitted by the Rule for filing the notice of appeal was Thursday, January 25, 1962. If the last day for filing had been a Saturday and the Clerk's office was closed that day, and if the Clerk had a post office mail box in which the notice of appeal was found on the following Monday, then Fallen might have been entitled to the benefit of a presumption that the notice of appeal was, on the last day for filing, in the box and in the custody of the Clerk so as to meet the requirement. Reynolds v. United States, 5th Cir. 1961, 288 F.2d 78, cert. den. 368 U.S. 883, 82 S.Ct. 127, 7 L.Ed. 2d 83; Ward v. Atlantic Coast Line Railroad Co., 5th Cir. 1959, 265 F.2d 75, rev. on other grounds, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820. But, here the Saturday on which it might be presumed the notice of appeal was in the Clerk's post office box was not the last day for filing but two days later. The most favorable inference that could be drawn or presumption indulged would be that, on the last day for filing, the notice of appeal was somewhere in the possession of the Post Office Department. Although a more liberal rule may elsewhere prevail,[5] this Court is committed to the principle that the jurisdictional requirement of timely filing of a notice of appeal is not met by the deposit of notice in the mail in time for it to reach the Clerk's office in the usual course of mail delivery within the time allowed. Ward v. Atlantic Coast Line Railroad Company, supra; Lejeune v. Midwestern Insurance Co. of Oklahoma City, 5th Cir., 1952, 197 F.2d 149; Poyner v. Commissioner of Internal Revenue, 5th Cir. 1936, 81 F.2d 521. Although these decisions were applying the Rules of Civil Procedure, there is no basis for a distinction that would make them inapplicable to a case under the Rules of Criminal Procedure.

Fallen does not raise any constitutional questions so we are not required to consider whether Courts of Appeal may, as the Supreme Court does,[6] take jurisdiction of a belated appeal in order to vindicate a constitutional right.

■ This might be regarded as a hard case. Although the trial judge, Judge Reeves, in imposing sentence, referred to Fallen's record as "a perfect catalogue of crimes," and to Fallen as "a menace to society" who had "repeatedly violated the law," we cannot avoid having sympathy for a man sentenced to twenty years in prison, who is now and will likely, during the remainder of his life, be in a wheel chair. We must not, however, forget the admonition given by the Supreme Court in its early years, that "Motives of commiseration, from whatever source they flow, must not mingle in the administration of justice." Penhallow v. Doane's Admr., 3 Dall. 53, 1 L.Ed. 507, quoted by Mr. Justice Clark in dissent, Gallegos v. State of Colorado, 82 S.Ct. 1209, 1962.

The appeal was not timely taken. It must be and hereby is

Dismissed.

RIVES, Circuit Judge (dissenting).

My brothers "cannot avoid having sympathy for a man sentenced to twenty years in prison, who is now and will likely, during the remainder of his life, be in a wheel chair." I join them in that expression. Our sympathy, however, will not be much solace to Fallen over the long period of years during which his physical suffering will be aggravated by the loss of his liberty. Our sympathy is gratuitously bestowed without being requested. What Fallen has asked is simple justice under the law. For him to be denied a right of appeal to test the validity of his conviction and twenty-year sentence is, in my opinion, a gross injustice, and one not consonant with the law.

---

5. Williams v. United States, D.C.Cir. 1951, 88 App.D.C. 212, 188 F.2d 41; Wallace v. United States, 8th Cir. 1949, 174 F. 2d 112, cert. den. 337 U.S. 947, 69 S.Ct 1505, 93 L.Ed. 1749.

6. Chessman v. Teets, 354 U.S. 156, 77 S. Ct. 1127, 1 L.Ed.2d 1253.

My brothers quote from footnote 5 of the very recent opinion of the Chief Justice, speaking for the Supreme Court, in Coppedge v. United States, 369 U.S. 441, 442, n. 5, as follows:

"Although the timely filing of a notice of appeal is a jurisdictional prerequisite for perfecting an appeal, United States v. Robinson, 361 U.S. 220 [80 S.Ct. 282, 4 L.Ed.2d 259], a liberal view of papers filed by indigent and incarcerated defendants, as equivalents of notices of appeal, has been used to preserve the jurisdiction of the Courts of Appeals."

My brothers fail to note, however, that among a number of examples which the Chief Justice cites is "Williams v. United States, 88 U.S.App.D.C. 212, 188 F.2d 41 (notice of appeal delivered to prison officials for forwarding to District Court)." The present holding is directly in conflict with the Williams case thus recently and favorably cited by the Supreme Court. My brothers do cite the Williams case along with Wallace v. United States, 8 Cir., 1949, 174 F.2d 112, in their footnote 5 appended to the text in which they recognize that " * * * a more liberal rule may elsewhere prevail." They might well have noted other cases in support of that text; for example, West v. United States, 94 U.S.App.D.C. 46, 1954, 222 F.2d 774, 778, 779; Oddo v. United States, 2 Cir., 1949, 171 F.2d 854, 855; and Remine v. United States, 6 Cir., 1947, 161 F.2d 1020, 1021. In the case last cited it was said:

"The motion of the United States to dismiss this convict's appeal in forma pauperis is denied. In the circumstances, the timeliness prescribed by the Rules of Criminal Procedure, rule 37, 18 U.S.C.A. following section 687, could not reasonably be required of the appellant, confined in a penitentiary of the United States some 2600 miles away from the district court in which he was convicted and sentenced."

In the instant case, Judge Simpson found:

"It is clear, nevertheless, that twelve days after trial and eight days after sentence, Mr. Fallen desired to enter (a) Motion for New Trial, (b) Notice of Appeal, and (c) to be permitted to appeal in forma pauperis and to receive a copy of the transcript of record." [1]

In view of Fallen's affidavit offered by his court-appointed counsel on this hearing, and of the failure of the Government to offer any contrary evidence, I would agree with Judge Simpson that on January 23, eight days after sentence, Fallen signed the two letters and turned them over to the prison authorities for mailing. At that time, clearly, he attempted to appeal. If the Government had not, on the day after he was sentenced, moved him from the place of trial to the federal penitentiary in Atlanta, his attempted appeal would have been filed within 10 days after entry of the judgment of conviction. Further, if the prison authorities had promptly mailed Fallen's letters, then, in due course of mail they would have reached the Clerk's Office before the expiration of the 10th day. The circumstances of this case are almost as strong as those in Reynolds v. United States, 5 Cir., 1961, 288 F.2d 78, in which we found that the notice of appeal mailed in time to be deposited in the post office box of the Clerk's Office on the tenth day, which happened to be Saturday on which the office was closed, would be treated as filed within the time allowed by Rule 37(a) (2), Federal Rules of Criminal Procedure.

There is a further circumstance peculiar to this case, which persuades me that the doctrine of Reynolds v. United States, supra, should be extended so as to hold that the notice of appeal should be treated as timely filed. That circumstance centers about the mandatory duty of the district court under Rule 37(a) (2) that, "When a court after trial imposes sentence upon a defendant not rep-

---

resented by counsel, the defendant shall be advised of his right to appeal and if he so requests, the clerk shall prepare and file forthwith a notice of appeal on behalf of the defendant." That provision was invoked but held inapplicable under the facts in Jackson v. United States, 4 Cir., 1956, 231 F.2d 653. I think that under that requirement a defendant should not be held to the strict requirement of filing his notice of appeal within the 10-day period if: (1) he was not represented by counsel of his own choice, or by court-appointed counsel who remained counsel for the defendant throughout the 10-day period after the judgment of conviction; and (2) the defendant did not know of the 10-day limitation on his right of appeal, and was not so advised either by the court or by his court-appointed counsel.

In the present case, the defendant was obviously ignorant, and actively sought advice from the district court. At the conclusion of the hearing at which he was sentenced, the following colloquy occurred:

"The Defendant: Can I appeal this case, Your Honor, as an insolvent?

"The Court: Beg pardon?

"The Defendant: May I appeal this case as an insolvent?

"The Court: Oh yes; you always have a right to appeal; the Government provides for that. So that will be all. We are through with this case. Mr. Marshal, you may take charge of the defendant."

The terms of appointment of counsel by the district court do not appear, and it is not clear whether representation under such appointment extended beyond the moment of sentencing when as the Judge said, "We are through with this case." Actually, his court-appointed counsel had a further conversation with the defendant which he related in the letter to Judge Simpson referred to in footnote 1 to the majority opinion:

"Mr. Fallen was found guilty on January 11, 1962, and after sen-

tencing on January 15, 1962, I talked with Mr. Fallen approximately an hour and a half. At that time he asked me if I would be interested in representing him if he should decide to appeal the decision in those cases, since he thought he could raise sufficient funds to pay an attorney's fee in connection with such an appeal. At that time I told Mr. Fallen that the firm with which I am associated did not wish me to undertake any further criminal matters, either by appeal or otherwise, and therefore, I suggested that Mr. Fallen secure another attorney without delay so as not to forfeit his right to appeal.

"Mr. Fallen thanked me very much for my efforts as his court-appointed attorney, and stated that he would secure another attorney.

"I have not represented Mr. Fallen since that conversation."

Fallen's affidavit shows that after this conversation, "I was returned to the Duval Medical Center, Jacksonville, Florida, where I was again placed under armed guard and not allowed to have visitors. On the morning of January 16, 1962, I was taken to Atlanta, Ga., to commence my term of imprisonment, where due to my illness and processing, I was unable to write to the court requesting a new trial until the 23rd of January, 1962."

Rule 37(a) (2) certainly requires more adequate advice and more effective assistance from the court for a defendant not represented by counsel than appears to have been given in response to the defendant's request. The defendant did not have counsel of his own choice or court-appointed counsel throughout the 10-day period allowed for filing his notice of appeal. That he was not adequately advised of his rights was recognized by Chief Judge Simpson in the following excerpt from his "Order with Respect to Notice of Appeal" (footnote 1 to majority opinion):

"It would appear from Mr. Moss' letter that while appeal was dis-

cussed on January 15 with Mr. Fallen, the provisions of Rule 33, F.R.Crim.P. with respect to motion for new trial were not discussed with him. That is to say—that it does not appear that Mr. Fallen was advised that motion for new trial should be made as a basis for Court of Appeals review of the sufficiency of the evidence nor that such motion should be made within five days after verdict or finding of guilty or within such further time as the Court may fix during the five-day period.

"Further, it does not appear that Mr. Fallen has been advised of the requirements of Section 1915(a), Title 28, U.S.Code, that affidavit must be made that he is unable to pay costs or give security therefor in order for the Court to authorize his appeal to be taken in forma pauperis."

A conclusion that the notice of appeal had not been timely filed would give rise to serious questions as to whether Fallen has been deprived of his constitutional rights. For example, due process (and a fortiori the Sixth Amendment) includes the right of an accused to "a fair opportunity to secure counsel of his own choice." Crooker v. California, 1958, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448. From this record, Fallen was accorded no such opportunity after the services of his court-appointed counsel terminated and before the expiration of the 10 days allowed for the filing of a notice of appeal.

Again, the record shows no specific terms or instructions of the court as to when the duties of the court-appointed attorney terminated. I have found no decision as to whether, in the absence of specific instructions, an attorney appointed to defend an accused upon his trial must continue to represent the defendant after final judgment of conviction and sentence and until a notice of appeal has been filed or the defendant has elected not to appeal. Court-appointed counsel in the present case did not consider that he was under any obligation to continue representing the defendant during this critical intermediate stage after conviction and before appeal.

The annotator in 2 L.Ed.2d 1649 observes that, "Whether an indigent defendant is, as a matter of due process, entitled to the assistance of counsel for the purpose of appealing from his conviction is a question which has not yet been squarely decided by the United States Supreme Court." After some argument he draws the conclusion that, "Thus, the establishment of the rule that a state must, as a matter of federal constitutional law, provide indigents with the assistance of counsel to prosecute appeals in criminal cases would appear to be no more than a logical extension of the Griffin doctrine," referring to Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. The Sixth Amendment would seem to require no less in federal prosecutions. See Johnson v. United States, 1957, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593; Ellis v. United States, 1958, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060; Chessman v. Teets, 1957, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253.

It is, of course, elementary law that every statute or rule is to be read in the light of the Constitution. McCullough v. Virginia, 1898, 172 U.S. 102, 112, 19 S.Ct. 134, 43 L.Ed. 382. A construction which raises grave and doubtful constitutional questions will not be adopted where some other construction is open to us. Missouri Pac. R. R. Co. v. Boone, 1926, 270 U.S. 466, 472, 46 S.Ct. 341, 70 L.Ed. 688.

Under all of the facts and circumstances of this case, I submit that Fallen's notice of appeal should be treated as timely filed, and that the motion of the United States to dismiss his appeal should be denied. I respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.